1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                                                    )
JAMES F. (JAY) LEVIAS,                          )
                                                                    )       No. C09-0302RSL
                                    Plaintiff,         )
                                                                    )
             v.                                                )
                                                                    )       ORDER GRANTING DEFENDANTS'
PACIFIC MARITIME ASSOCIATION, *et al.*,   )       MOTION FOR SUMMARY JUDGMENT
                                                                    )
                                    Defendants.    )
_____)

          This matter comes before the Court on defendants' motions for summary

judgment.  Dkt. # 39 and # 40.  Summary judgment is appropriate when, viewing the facts in the

light most favorable to the nonmoving party, there is no genuine issue of material fact that would

preclude the entry of judgment as a matter of law.  Addisu v. Fred Meyer, Inc., 198 F.3d 1130,

1134 (9th Cir. 2000).  The party seeking summary dismissal of the case "bears the initial

responsibility of informing the district court of the basis for its motion" (Celotex Corp. v.

Catrett, 477 U.S. 317, 323 (1986)) and identifying those portions of "the pleadings, the

discovery and disclosure materials on file, and any affidavits" that show the absence of a

genuine issue of material fact (Fed. R. Civ. P. 56(c)).  Once the moving party has satisfied its

burden, it is entitled to summary judgment if the non-moving party fails to designate "specific

facts showing that there is a genuine issue for trial."  Celotex Corp., 477 U.S. at 324.  "The mere

existence of a scintilla of evidence in support of the non-moving party's position is not

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

1   sufficient:"  the opposing party must present probative evidence in support of its claim or
2   defense.  Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 919 (9th Cir. 2001); Intel
3   Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).  In other words,
4   "summary judgment should be granted where the nonmoving party fails to offer evidence from
5   which a reasonable jury could return a verdict in its favor."  Triton Energy Corp. v. Square D
6   Co., 68 F.3d 1216, 1221 (9th Cir. 1995).

7          Having reviewed the memoranda, declarations, and exhibits submitted by the
8   parties[1] and taking the evidence in the light most favorable to plaintiff, the Court finds as
9   follows:

10                              **FACTUAL BACKGROUND**

11          Plaintiff was first registered as a Class B longshore worker at the Port of Seattle on
12   February 3, 1990.  Under the governing collective bargaining agreement ("CBA"), longshore
13   workers are classified as either "casual" or "registered" based on experience and seniority.
14   Workers typically start as "casuals" and work their way up to Class B and finally to Class A
15   registered status.[2]  Plaintiff, however, entered the industry as a Class B worker pursuant to the
16   "Permissive Rule" which allows the child of a longshore worker who dies while registered to

17
18
19
20
          [1] Plaintiff's motion to strike parts of ¶ 16 of the Declaration of Leal Sundet in Support of
21   Defendants' International Longshore and Warehouse Union ("ILWU") and Local 19 Joint Motion for
     Summary Judgment (Dkt. # 36) is DENIED.  Mr. Sundet's statements regarding what occurred at the
22   August 27, 2008, meeting are based on his personal knowledge.  The factual predicate for converting his
     personal views regarding the merits of plaintiff's grievance into the ILWU's views is not adequately
23   stated, however.  The Court has considered the stated reasons for the denial only as a reflection of Mr.
24   Sundet's personal views, not as the official or stated views of the ILWU as a whole.

25          [2] Because Class A longshore workers have the most work opportunities, union members
     generally strive towards elevation to Class A status.
26
     ORDER GRANTING DEFENDANTS'
     MOTION FOR SUMMARY JUDGMENT            -2-

1   receive Class B registration without first working as a casual.[3]

2          As a Class B registered longshoreman, plaintiff was required under section 9.13 of

3   the Coastwise Rules to work or be available to work at least 70 percent of the average hours

4   worked by Class B longshore workers in his port.  Two violations of the "70 percent rule" will

5   result in mandatory deregistration if the individual had notice of the first violation or a prior

6   warning from the Joint Labor Relations Committee ("JPLRC") at the port.[4]  Decl. of Joseph T.

7   Weber (Dkt. # 41), Ex. B.  Plaintiff failed to satisfy the 70 percent rule in December 1990 and

8   January 1991 and was asked to appear before the JPLRC in February 1991.  At that time, he was

9   informed that continued failure to make himself available for work could result in deregistration.

10  Levias Dep. Tr. (Dkt. # 43) at 20-21.  The JPLRC subsequently asked plaintiff to appear at its

11  August 8, 1991, meeting because plaintiff had again failed to satisfy the 70 percent rule in June

12  1991.  Plaintiff did not attend the meeting and was deregistered effective August 8, 1991,

13  because of low hours.  Decl. of David E. Breskin (Dkt. # 62), Ex. 24.  At the end of 1991,

14  plaintiff wrote a letter to the president of defendant Local 19 seeking reinstatement in the union.

15  Levias Dep. Tr. (Dkt. # 43) at 58.  The union did not take action on the letter and plaintiff

16  allowed the matter to drop until 2004.  Id.

17         In September 2004, plaintiff asked to meet with the JPLRC to discuss

18  reinstatement to the industry.  Decl. of Counsel Dmitri Iglitzin (Dkt. # 35), Ex. D.  In light of the

---

[3]  The Memorandum of Coastwise Rules Covering Registration and Deregistration of Longshoreman and Clerks ("the Coastwise Rules") (along with other local and coastwide agreements), governs the circumstances under which longshore workers are registered and/or deregistered.  Decl. of Joseph T. Weber (Dkt. # 41), Ex. B.  Section 7 of the Coastwise Rules allows a child of a deceased registered longshore worker who was on the active registration list at the time of death to apply for Class B registration in the same category that the decedent was registered, provided that the child becomes the sole support of the decedent's family and that other considerations, not applicable here, are met.

[4]  The JPLRC hears disputes that arise under the CBA and is comprised of an equal number of union and employer representatives.  Decl. of Leal Sundet (Dkt. # 36) at ¶ 5.

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT          -3-

1   fact that plaintiff was only 19 years old and was still coping with the death of his father when he

2   was deregistered in 1991, the unions, defendants International Longshore and Warehouse Union

3   ("ILWU") and Local 19, and the employer, defendant Pacific Maritime Association, supported

4   plaintiff's request for reinstatement.  Reinstatement in this situation was entirely discretionary:

5   it was not required by either the Coastwise Rules or the collective bargaining agreement.

6   Plaintiff recognizes that Local 19 president Harold Ugles went "above and beyond" to get him

7   reregistered as a longshoreman.  Levias Dep. Tr. (Dkt. # 43) at 39-40.  The Coastwide Labor

8   Relations Committee ("CLRC") reregistered plaintiff on December 6, 2005, pursuant to the

9   discretionary authority provided by section 8.3 of the Coastwise Rules.[5]  Decl. of Joseph T.

10  Weber (Dkt. # 41) at ¶ 12.  At the time, plaintiff did not request seniority for time spent

11  previously in the industry from January 1990 to August 1991, advancement to Class A status, or

12  reinstatement of his original registration date of February 3, 1990.  Id. at ¶ 14.  The CLRC's

13  determination simply reregistered plaintiff as a Class B longshore worker:  it did not address the

14  issue of plaintiff's seniority.  Decl. of Counsel Dmitri Iglitzin (Dkt. # 35), Ex. E.

15          The JPLRC added plaintiff to the registration lists effective January 14, 2006.

16  Decl. of David E. Breskin (Dkt. # 62), Ex. 5.  The registration card plaintiff received from the

17  union identified his registration date as February 3, 1990.  Decl. of James Levias (Dkt. # 61) at

18  ¶ 3.  At some point after April 29, 2006, Local 19 resequenced the seniority lists and gave

19  plaintiff a registration date of January 2006.  In March 2007, plaintiff asked Local 19 president

20  Ugles about his seniority status and advancement to Class A.  Mr. Ugles told plaintiff that he

21  should not push the seniority issue because (a) it would raise resentment against plaintiff and

22  (b) he would have enough seniority to reach Class A soon enough.  Id. at ¶ 8.  On September 12,

23

24          [5]  Section 8.3 provides that "[d]eregistration for cause from the registration list . . . shall
        permanently exclude an individual from any registration list established or maintained . . . unless the
25      JPLRC agrees to grant reregistration to such individual subject to the approval of the []CLRC . . ." Decl.
        of Joseph T. Weber (Dkt. # 41), Ex. B.
26

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT          -4-

2007, plaintiff filed a grievance seeking credit for the eighteen months he had worked in the industry before his deregistration.[6]  The only authority plaintiff could find for his request was the "Reinstatement Guidelines–Alcohol and Drug Recovery Program" outlined in CLRC 14-99, Item 8.  Plaintiff understood, however, that CLRC 14-99 did not apply to him.[7]

Plaintiff argues that, on March 27, 2008, he amended his grievance to seek credit for the years between his original registration date and his reinstatement, including the years he was not working in the industry.  Opposition (Dkt. # 60) at 9.  Even when considered in the light most favorable to plaintiff, the March 27, 2008, letter does not include a demand for sixteen years of retroactive seniority:

> After much careful consideration and consultation, I have decided to push forward on this matter as I feel this is the right thing to do.  I don't believe I was rightfully deregistered years ago after only one warning especially considering there was no way to possibly know I was low in hours until it was too late.  There were several procedures and protocols that weren't followed at the time, *however that's not the matter at hand;  I am simply asking for credit for the time I was previously registered.*

Decl. of David E. Breskin (Dkt. # 62), Ex. 11 (emphasis added).  Although plaintiff questions the way his deregistration was handled in 1991, he clearly limits the relief sought in the

---

[6]  Plaintiff specifically requested that his reinstatement "be retroactive to [his] original date of registration minus [his] time out of the industry . . ." and that he be advanced "to A registration at the next stop-work meeting."  Decl. of Counsel Dmitri Iglitzin (Dkt. # 35), Ex. G.

[7]  When plaintiff met with Local 19 president Ugles and Matt Ventoza regarding reinstatement in 2004, they discussed the CLRC 14-99 program.  Levias Dep. Tr. 34:5-11. The program allows longshore workers deregistered because of drug or alcohol dependency to be reinstated with credit for the time previously worked in the industry. The CLRC 14-99 program can be utilized only if the worker's time away from the industry did not exceed his time in the industry.  Decl. of Joseph T. Weber (Dkt. # 41), Ex. F.  Messrs. Ugles and Ventoza informed plaintiff that CLRC 14-99 would not apply because he did not meet this criterium.  Levias Dep. Tr. (Dkt. # 43) at 38.  Plaintiff understood he was not eligible for CLRC 14-99 in any event because he was not deregistered due to a drug and alcohol problem.  Id. at 37-39.

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT                    -5-

1   grievance to "credit for the time [he] was previously registered."  The March 27, 2008, letter is

2   entirely consistent with the initial grievance letter of September 12, 2007.

3           On April 30, 2008, plaintiff appeared before the JPLRC to discuss his request for

4   retroactive seniority.  Apparently unbeknownst to plaintiff, the union and employer

5   representatives on the JPLRC agreed that plaintiff was not entitled to an earlier registration date

6   and decided to refer the matter to the CLRC.[8]  Local 19 president Ugles and another union

7   member, Richard Austin, were two of the three union representatives at the time plaintiff's

8   grievance was considered.  Between April 30, 2008, and June 27, 2008, plaintiff's grievance

9   continued to appear in the JPLRC's minutes with the issue described as some variant of "Mr.

10  Levias requested he be assigned his original Class 'B' date that was given to him when he was

11  reinstated into the industry."  Decl. of David E. Breskin (Dkt. # 62), Ex. 12.  See also Id. at Ex.

12  22.  The minutes from the JPLRC's May and June meetings note that a referral to the CLRC was

13  in progress.

14          On June 27, 2008, a summary of the grievance and seventeen exhibits were

15  submitted to the CLRC.  In the referral document, the JPLRC informed the CLRC that plaintiff

16  was "asking for his Class 'B' date of January 14, 2006 to be made retroactive to his original

17  Class 'B' date of February 3, 1990, minus his years out of the Industry, thus giving him a new

18  Class 'B' registration date of July 2004."  Decl. of Counsel Dmitri Iglitzin (Dkt. # 35), Ex. H.

19  The JPLRC summarized its findings as follows:

20          The Seattle Joint Port Labor Relations Committee agrees that Mr. Levias was
            appropriately given a new Class "B" date effective January 14, 2006 when he was
21          reinstated in meeting WASE-0004-2006, held February 2, 2006, as agreed-to by
            the Committee at that time.  The Committee states Mr. Levias' reinstatement was
22          handled in the same manner as all other Seattle Joint Port Labor Relations
23

24  ──────────────────
        [8]  Decl. of Joseph T. Weber (Dkt. # 17); Decl. of Counsel Dmitri Iglitzin (Dkt. # 35), Ex. H.
25  JPLRC decisions are subject to review by the CLRC, which is ultimately responsible for the registration
    and deregistration of longshore workers.  Decl. of Leal Sundet (Dkt. # 36) at ¶ 5.
26

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT          -6-

1   Committee reinstatements to the Longshore Class "B" registration list; thereby,
2   Mr. Levias was given new Class "B" registration date.  The Seattle Joint Port
    Labor Relations Committee further agrees to deny Mr. Levias' request for a
3   retroactive Class "B" date of July 2004, and in addition, the Seattle Joint Port
4   Labor Relations Committee agrees Mr. Levias is excluded from the provisions of
    CLRC 14-99 even though he makes reference to the provisions of CLRC 14-99 in
5   his request.

6   Id.

7          A month after the referral was made, plaintiff wrote to the JPLRC.  Despite a

8   number of inquiries, plaintiff was unaware of the status of his grievance:  he did not know that

9   the JPLRC had denied the grievance or that the matter had been referred to the CLRC.  In his

10  letter, plaintiff noted that further review of his personnel file had generated an additional "list of

11  reasons why [he felt that he was] entitled to retroactive seniority . . . ."  Decl. of David E.

12  Breskin (Dkt. # 62), Ex. 30.  The list included objections to the procedures followed in his 1991

13  deregistration, criticism of the 70 percent rule, and a challenge to the decision to deny him any

14  retroactive seniority when he was reregistered.  Id.  This information was not forwarded to the

15  CLRC.

16         At least one member of the CLRC independently reviewed the record presented by

17  the JPLRC.  Based on that review, the ILWU agreed that plaintiff's grievance should be denied.

18  Decl. of Leal Sundet (Dkt. # 36) at ¶ 15.  Because the employer representative had come to the

19  same conclusion, the discussion of this matter at the August 27, 2008, CLRC meeting was

20  relatively brief.  The minutes simply state:  "The Committee agreed to deny this request."  Id. at

21  Ex. E.  Plaintiff was apprised of the denial on September 11, 2008.  This action was filed on

22  March 9, 2009, alleging that plaintiff "was entitled to be reinstated to Class B status in

23  December 2005 with full accumulated seniority for all time in the industry and to have a

24  seniority date that reflected the date upon which he first commenced work in the longshore

25  industry as an identified casual."  Complaint at ¶ 3.8.  Plaintiff asserts that defendants breached

26

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT          -7-

1   the governing labor relations contracts and that ILWU and Local 19 breached their duty of fair

2   representation.  Complaint at ¶ 4.1 and ¶ 4.2.

3                                              **DISCUSSION**

4            Plaintiff has initiated a hybrid suit against the unions and the employer, alleging

5   that the unions violated their duty of fair representation and that the employer, Pacific Maritime

6   Association, breached the CBA under § 301 of the Labor Management Relations Act.  In order

7   to prevail against either the unions or the employer, plaintiff must show both a breach of duty by

8   the unions and a breach of contract by the employer.  DelCostello v. Int'l Bhd. of Teamsters, 462

9   U.S. 151, 164-65 (1983).[9]  Because "nothing requires the district court to decide the fair

10  representation question first," the Court turns to the merits of plaintiff's claim that defendants

11  breached the collective bargaining agreement.  Bliesner v. Commc'n Workers of Am., 464 F.3d

12  910, 914 (9th Cir. 2006).[10]

13       **1.   Denial of Retroactive Seniority**

14           Plaintiff argues that, because there is nothing in § 8.3 of the Coastwise Rules or

15  _____

16       [9]  Plaintiff relies on Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6, 493 U.S.
    67 (1989), for the proposition that he "may succeed on his claims against the union independent of his
17  claim against the employer."  Opposition (Dkt. # 60) at 24.  Breininger establishes that a plaintiff may
    choose to bring a hybrid fair representation/§ 301 suit in federal court against the union, the employer,
18  or both:  the primary issue was whether federal courts could exercise jurisdiction over a fair
    representation claim in the absence of a claim against the employer.  Breininger did not discuss
19  plaintiff's burden of proof when pursuing such a claim.  Other cases have, however.  "Whether the
    defendant is the union or the employer, the required proof is the same:  The plaintiff must show that
20  there has been both a breach of the duty of fair representation and a breach of the CBA."  Bliesner, 464
    F.3d at 913-14.
21

22       [10]  Plaintiff alleges that the unions violated their duty of fair representation when they failed to
    respond to requests for information, did not permit him to review the referral to the CLRC, acted while
23  under a conflict of interest, misrepresented facts to the CLRC, and failed to investigate and/or pursue his
    grievance.  The evidence shows that the unions, working with the employer, showed extraordinary
24  leniency toward Mr. Levias when they took him back into the union fold in 2004.  Although the merits
    of plaintiff's fair representation claim need not be addressed, the Court does not intend to suggest, and is
25  not suggesting, that the unions treated plaintiff unfairly in any way.

26
    ORDER GRANTING DEFENDANTS'
    MOTION FOR SUMMARY JUDGMENT              -8-

other binding authority that required plaintiff to give up his seniority when he reregistered in

2006, defendants have violated the CBA.  Plaintiff offers no analysis or case law in support of

this theory of contractual liability.  Pursuant to § 8.3, deregistration is generally considered a

permanent separation of the worker from the union.  The JPLRC, with the approval of the

CLRC, may in its discretion grant reregistration, but this process is rarely used.  The contract

imposes no limitations on the Committee's discretion in determining whether reregistration is

appropriate or under what conditions it should be permitted.

Plaintiff has the burden of identifying the provision of the contract which

defendants are alleged to have breached.  See Commer v. Am. Fed'n of State, County & Mun.

Employees, 272 F. Supp.2d 332, 338 (S.D.N.Y. 2003).  He has not done so.  Plaintiff

acknowledges that there is no provision in the CBA that entitles him to seniority earned prior to

deregistration (Levias Dep. Tr. (Dkt. # 43) at 171-72) and that the only provisions touching on

this subject (the Alcohol and Drug Recovery Program set forth in CLRC 14-99) do not apply to

him (Id. at 37-38).  In the absence of a contractual provision, binding policy, or long-standing

practice that gave plaintiff a right to recover seniority that had accrued during an earlier

registration period, defendants' decision to deny plaintiff's request was not a breach of the

collective bargaining agreement.

### 2. 1991 Deregistration

Plaintiff argues that, because he should not have been deregistered in 1991,

defendants had no good faith reason to deprive him of seniority earned in the interim.  It is not

clear whether plaintiff is challenging the validity of the 1991 deregistration or whether he is

asserting that defendants should not have relied on it when evaluating his grievance.[11]  Either

---

[11]  At oral argument, plaintiff's counsel suggested that Mr. Levias simply wanted defendants to consider the propriety of his 1991 deregistration when determining whether plaintiff were entitled to recover the seniority he accrued between February 3, 1990, and August 8, 1991.  Defendants were not under any contractual obligation to consider specific factors when determining plaintiff's grievance,

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT          -9-

1    way, plaintiff's argument is unpersuasive.

2            If plaintiff is substantively challenging the 1991 deregistration, he is at least

3    fourteen years  too late.  Grievances related to registration or deregistration must be filed within

4    six months.  Decl. of Leal Sundet (Dkt. # 36), Ex. A (§§ 17.41, 17.411) and Ex. C (¶ 12).

5    Although there is some question regarding the exact date on which plaintiff learned that he had

6    been deregistered, he was clearly aware of the deregistration when he sought reinstatement at the

7    end of 1991.  Plaintiff did not file a timely grievance related to his deregistration and has

8    therefore failed to exhaust his contractual remedies.[12]  Plaintiff cannot litigate the validity of the

9    1991 deregistration in this action.

10           If plaintiff is asserting that defendants should not have considered the

11   deregistration when evaluating his seniority claim, he offers no factual or legal argument in

12   support.  Plaintiff was, in fact, deregistered in 1991:  plaintiff did not work as a longshoreman

13   thereafter for over a decade.  The deregistration was not grieved or invalidated, and plaintiff

14   understood that he had to seek reinstatement if he wanted to work on the waterfront again.

15   Defendants were entitled to consider what was, until recently, an uncontested fact when

16   evaluating plaintiff's claim for seniority.

much less to credit his untimely assertions of procedural error.  Plaintiff has failed to show that
defendants violated any provision of the CBA when investigating and evaluating plaintiff's 2007
grievance.

        [12]  In the circumstances presented here, defendants did not waive their failure to exhaust defense.
Because plaintiff did not challenge the validity of the 1991 deregistration in his complaint, defendants
would have had no reason to raise a defense to that claim.

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT            -10-

1

**CONCLUSION**

2          For all of the foregoing reasons, no reasonable jury could find that defendants

3   violated the collective bargaining agreement.  The § 301 claim for breach of contract is therefore

4   DISMISSED.  Because plaintiff must succeed on both the breach of contract and the fair

5   representation claim in order to hold defendants liable, plaintiff's claims are DISMISSED in

6   their entirety.

7

8          Dated this 3rd day of September, 2010.

9

10                                                      Robert S. Lasnik
                                                        United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT          -11-